Opinion by Judge WILLIAM A. FLETCHER; Dissent by Judge TALLMAN.
ORDER
This court’s opinion filed July 23, 2009, and reported at 573 F.3d 903, is withdrawn and is replaced by the attached Opinion and Dissent.
The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on whether to rehear the matter en bane. Fed. R.App. P. 35.
The petition for rehearing en banc, filed August 25, 2009, is DENIED.
OPINION
W. FLETCHER, Circuit Judge:
Appellants Sonya Renee, et al., appeal the district court’s order granting summary judgment in favor of Appellees U.S. Department of Education and Arne Duncan, Secretary of Education[1] (collectively, “the Secretary”). Appellants challenge a federal regulation permitting teachers who are participating in alternative-route teacher training programs, but have not yet obtained full State certification, to be characterized as “highly qualified teachers” under the No Child Left Behind Act. The district court granted summary judgment to the Secretary. We reverse and remand.
I. Background
A. No Child Left Behind Act and the Challenged Regulation
The No Child Left Behind Act (“NCLB”) was enacted in 2002. Its overarching goal is “to ensure that all children have a fair, equal, and significant opportunity to obtain a high-quality education and reach, at a minimum, proficiency on challenging State academic achievement standards and state academic assessments.” 20 U.S.C. § 6301. NCLB seeks to close the “achievement gap between high- and low-performing children, especially the achievement gaps between minority and nonminority students, and between disadvantaged children and their more advantaged peers.” Id. § 6301(3).
Each state is responsible for ensuring compliance by its local school districts. Id. §§ 1232c, 7844(a). NCLB provides funds to states and schools under several sections, only one of which is central to this appeal. Specifically, Title I funds are used to supplement the educational needs of disadvantaged students. Id. §§ 6301 et seq. The Secretary has the authority to enforce NCLB. He may withhold funds or take other enforcement action if a state *791 fails to comply substantially with NCLB’s requirements. Id. § 1234c (“Whenever the Secretary has reason to believe that any recipient of funds under any applicable program is failing to comply substantially with any requirement of law applicable to such funds, the Secretary may ... withhold further payments under that program as authorized by section 1234d of this title[.]”).
A premise of NCLB is that good teachers — defined by Congress as “highly qualified” teachers — are crucial to educational success. NCLB provides that, by the end of the 2005-06 academic year, only “highly qualified” teachers should instruct core academic classes in school districts receiving Title I funding (the “100% requirement”). Id. § 6319(a)(2). “Core academic subjects” are “English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history, and geography.” Id. § 7801(11); 34 C.F.R. § 200.55(c).
NCLB requires that states and school districts develop and submit plans to meet the mandates of the statute. 20 U.S.C. §§ 6311(a)(1), 6311(b)(8)(C), 6319(a)(2) (state plans); id. §§ 6312(b)(l)(N), 6312(c)(l)(I), 6319(a)(3) (district plans). To receive funds under Title I of the statute, NCLB requires states to identify steps they will take to ensure that “poor and minority children are not taught at higher rates than other children by inexperienced, unqualified, or out-of-field teachers.” Id. § 6311(b)(8)(C).
NCLB also requires that states and school districts report annually on their progress toward meeting the 100% requirement. Id. §§ 6311(h)(l)(C)(viii), 6311(h)(2), 6319(b)(1). States must provide this information to the Secretary, id. §§ 6311(h)(4)(G), 6319(b)(1)(B), who must report nationwide statistics on “highly qualified teachers” to Congress, id. § 6311(h)(4)-(5). Schools receiving Title I funds must inform a parent when his or her child is taught for four or more weeks by a teacher who is not “highly qualified.” Id. § 6311(h)(6)(B)(ii).
If a “State educational agency” fails to submit to the Secretary a “plan” satisfying the requirements of NCLB, id. § 6311(a)(1), the Secretary may withhold federal funds until the state has done so. Id. § 6311(g)(2) (“If a state fails to meet any of the requirements of this section, other than the requirements described in paragraph (1) [not at issue here], then the Secretary may withhold funds for State administration under this part until the Secretary determines that the State has fulfilled those requirements.”); id. § 6311(b)(8)(C) (“Each State plan shall describe ... the specific steps the State educational agency will take to ensure that both schoolwide programs and targeted assistance schools provide instruction by highly qualified instructional staff as required by sections 6314(b)(1)(C) and 6315(c)(1)(E).”).
NCLB contains a lengthy definition of “highly qualified teacher.” Of central concern in this litigation, “highly qualified” means that:
the teacher has obtained full State certification as a teacher (including certification obtained through alternative routes to certification) or passed the State teacher licensing examination, and holds a license to teach in such State, except that when used with respect to any teacher teaching in a public charter school, the term means that the teacher meets the requirements set forth in the State’s public charter school law[.]
20 U.S.C. § 7801(23)(A)(i) (emphasis added).
On December 2, 2002, the Secretary promulgated regulations providing a more de *792 tailed definition of the statutory term “highly qualified teacher.” 34 C.F.R. § 200.56. Section 200.56 provides, in pertinent part:
[A] “highly qualified teacher” ... meets the requirements in paragraph (a) [and other paragraphs not relevant to this appeal].
(a) In general.
(1)Except as provided in paragraph (a)(3) of this section [covering charter schools], a [“highly qualified”] teacher ... must—
(1) Have obtained full State certification as a teacher, which may include certification obtained through alternative routes to certification; or
(ii)(A) Have passed the State teacher licensing examination; and (B) Hold a license to teach in the State.
(2) A teacher meets the requirement in paragraph (a)(1) of this section if the teacher—
(i) Has fulfilled the State’s certification and licensure requirements applicable to the years of experience the teacher possesses; or
(ii) Is participating in an alternative route to certification program under which—
(A) The teacher—
(1) Receives high-quality professional development ...;
(2) Participates in a program of intensive supervision ...;
(3) Assumes functions as a teacher only for a specified period of time not to exceed three years; and
(4) Demonstrates satisfactory progress toward full certification as prescribed by the State [.]
Id. (emphasis added).
Neither NCLB nor the Secretary’s regulation defines “alternative routes to certification.” The traditional path to a teaching credential generally involves obtaining a degree and taking education courses. The term “alternative routes to certification” generally refers to non-traditional training programs that are typically designed for people who already hold at least a bachelor’s degree in a field other than education. These alternative programs are often designed to address teacher shortages in specific subjects or geographic areas. See, e.g., Cal. Educ.Code § 44382 (“Alternative certification programs shall address geographic and subject matter shortage areas, and shall be targeted toward people with work experience and others who already have a bachelor’s degree in the field in which they plan to teach.”).
Some aspects of the traditional route to teacher certification — such as formal course work in education philosophy or pedagogy- — -are typically shortened, or sometimes waived altogether, in alternative-route programs. Several well-known and successful alternative-route programs, such as Teach for America and Troops to Teachers, provide some training to participants before they begin teaching in the classroom. Teach for America participants, for example, receive training during the summer before they enter the classroom. Support and training typically continue for the length of an alternative-route program. After successful completion of an alternative-route program, a teacher receives a credential similar or identical to a credential obtained after successful completion of a traditional teacher-training program.
Appellants do not object to characterizing an alternative-route teacher who has already obtained “full State certification” as a “highly qualified teacher.” See 20 U.S.C. § 7801(23)(A)(i) (“highly qualified *793 teacher” includes an alternative-route teacher who “has obtained full State certification as a teacher”) (emphasis added); 34 C.F.R. § 200.56(a)(1)® (“highly qualified teachers” include alternative-route teachers who “have obtained full State certification as a teacher”) (emphasis added). However, Appellants do object to characterizing as a “highly qualified teacher” an alternative-route teacher who has not yet obtained full state certification, but who merely “[djemonstrates satisfactory progress toiuard full certification®” 34 C.F.R. § 200.56(a)(2)(ii)(A)(4) (emphasis added). Appellants contend that such teachers are not “highly qualified” within the meaning of § 7801(23).
B. California Law
Neither NCLB nor the Secretary’s regulation defines the term “full State certification” contained in NCLB. The parties agree that NCLB gives the states considerable flexibility in establishing credentialing systems under which a state teaching permit or credential may constitute “full State certification” within the meaning of NCLB. California law uses the terms “waiver,” “permit,” and “credential” to indicate various levels of teachers, and of certification, under state law. California has several levels of waivers, permits, and credentials, arranged in a rough hierarchy.
First, beginning at the bottom of the hierarchy, there are waivers. Individuals can teach pursuant to a waiver of the requirement for either a permit or credential. The Commission on Teacher Credentialing has authority to grant waivers in specified situations. Cal. Educ.Code § 44225(m).
Second, there are emergency permits, including an Emergency 30-day Substitute Teaching Permit, CahCode Regs. tit. 5, § 80025, and an Emergency Career Substitute Teaching Permit, id. § 80025.1. Emergency permits are valid for no more than one year and are restricted to the district that requested the issuance of the emergency permit. Id. § 80023.1. Teachers can renew emergency permits, but renewal ordinarily requires, among other things, demonstrated progress toward a non-emergency credential. Id. § 80026.6(a)(6).
Third, there are Short-Term Staff Permits and Provisional Internship Permits. Unlike emergency permits, which largely cover substitute teachers, these permits allow a teacher to serve as a teacher of record in an assigned classroom. Id. §§ 80021(e), 80021.1(e).
Fourth, there is an “intern credential.” This is the first certification in the hierarchy that California characterizes as a “credential” rather than a “permit.” An intern credential holder is participating in, but has not yet completed, an alternative-route teacher training program. See Cal. Educ. Code §§ 44830.3, 44259(b)(3)(C). Like Short-Term and Provisional Internship permits, an intern credential allows the holder to serve as a teacher of record. Id. §§ 44325(a), 44326, 44830.3(a). California requires internship programs to provide “preservice training ... tailored to the grade level or class to be taught.” Id. § 44830.3(b)(3).
Fifth, there is a “preliminary credential.” A preliminary credential may be obtained through either a traditional or an alternative-route teacher training program. Id. § 44259(b)(3). A preliminary credential is generally valid for five years. Id. § 44251(a)(2), (b)(2). The minimum requirements for a preliminary credential include a bachelor’s degree, a passing score on the state’s “basic skills examination,” satisfactory completion of an accredited “program of professional preparation” (including traditional and alternative-route programs), and a passing score on one or *794 more subject matter examinations or completion of an approved subject matter program. Id. § 44259(b).
Finally, at the top of the hierarchy, there is a “clear credential.” See id. § 44259(c). To obtain a clear credential, an individual must have held a preliminary credential, have completed a “program of beginning teacher induction,” and have gained experience in specified areas. Id. § 44259(c)(2), (4). Clear credentials are generally valid for life. See id. § 44251(a)(3), (b)(3).
In 2004, after the promulgation of the federal regulation challenged in this case, California promulgated regulations that piggybacked on the federal regulation. The California regulation applicable to middle and secondary schools provides that a teacher “meets NCLB requirements” if the teacher “[i]s currently enrolled in an approved intern program for less than three years or has a full credential.” CaLCode Regs. tit. 5, § 6110(2) (emphasis added). The regulation applicable to elementary schools provides the same thing, but omits the word “full” before “credential.” Id. § 6101(2) (“[i]s currently enrolled in an approved intern program for less than three years or has a credential”) (emphasis added). By their use of the word “or,” these regulations indicate that an intern teacher does not have a “(full) credential.” That is, the California regulations provide the qualification criterion in the alternative: A teacher “meets NCLB requirements” if the teacher is “enrolled in an approved intern program” or if the teacher “has a (full) credential.”
The 2004 California regulations mimic the federal regulation challenged in this case. As described in greater detail above, the federal regulation provides that a teacher may be considered fully certified, and thus “highly qualified,” within the meaning of NCLB, if the teacher “[i]s participating in an alternative route to certification program” and “[djemonstrates satisfactory progress toward full certification,” or if the teacher “[h]as fulfilled the State’s certification and licensure requirements applicable to the years of experience the teacher possesses.” 34 C.F.R. § 200.56(a)(2). Mimicking the federal regulation, the California regulations provide that a teacher “meets NCLB requirements” if that teacher is “currently enrolled in an approved intern program for less than three years” or “has a (full) credential.” Cal.Code Regs. tit. 5, §§ 6110(2), 6101(2).
Appellants contend that the challenged federal regulation, upon which the 2004 California regulations are based, allows a disproportionate number of interns to teach in minority and low-income schools in California, in violation of NCLB. Specifically, they contend that intern teachers in California do not have “full State certification” and are thus not “highly qualified teachers” within the meaning of NCLB. They contend that if the federal regulation is declared invalid, California will not be allowed to treat intern teachers as highly qualified teachers for purposes of NCLB. The result, Appellants contend, will be that California is likely to take steps to ensure that fewer intern teachers, and more teachers with “preliminary” and “clear” credentials, teach in minority and low-income public schools in California.
II. Prior Proceedings
Appellants brought suit in federal district court, alleging that 34 C.F.R. § 200.56(a) is invalid to the extent that it characterizes an alternative-route teacher who is still in the process of obtaining “full State certification” as a “highly qualified teacher.” The challenged portion of the regulation is § 200.56(a)(2)(h). Both parties moved for summary judgment. The *795 district court granted summary judgment to the Secretary, upholding § 200.56(a)(2)(ii). Appellants timely appealed.
We have jurisdiction pursuant to 28 U.S.C. § 1291.
III. Standard of Review
We review de novo questions of justiciability under Article III. Porter v. Jones, 319 F.3d 483, 489 (9th Cir.2003). We also review de novo a district court’s grant of summary judgment. Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930, 941 n. 17 (9th Cir.2006). “Although we give deference to an agency’s construction of a statutory provision it is charged with administering, we must reject those constructions that are contrary to clear congressional intent or that frustrate the policy Congress sought to implement.” Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1175 (9th Cir.2002) (internal citation omitted).
IV. Discussion
A. Order of Analysis
The Secretary argues that Appellants do not have Article III standing. In a case where Article III justiciability is at issue, we usually begin our discussion with that question because Article III justiciability is a prerequisite to reaching the merits of the dispute. We conclude that Appellants have Article III standing, as discussed below. But we reverse the usual order of discussion because we think our discussion of the merits will help the reader understand our discussion of Article III standing.
B. The Merits
The challenged federal regulation interprets a federal statute. The regulation was adopted by the responsible federal agency through notice and comment rule-making. We therefore apply the analytical framework outlined in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The first question is “whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Id. at 842-843, 104 S.Ct. 2778; see also Pac. Nw. Generating Coop. v. Dep’t of Energy, 580 F.3d 792, 806 (9th Cir.2009). If, however, we determine that Congress has not clearly spoken on the precise question, the second question is whether the agency’s interpretation “is based on a permissible construction of the statute.” Chevron, 467 U.S. at 843, 104 S.Ct. 2778. Because the intent of Congress, as expressed in the NCLB, is clear, we do not get beyond the first question.
NCLB provides that an alternative-route teacher is “highly qualified” once he or she has obtained “full State certification.” The statutory text provides, in pertinent part:
The term “highly qualified”—
(A) when used with respect to any public elementary school or secondary school teacher teaching in a State, means that — •
(i) the teacher has obtained full State certification as a teacher (including certification obtained through alternative routes to certification)!.]
20 U.S.C. § 7801(23) (emphasis added). NCLB does not define “full State certification,” but it makes clear — whatever “full State certification” means — that such certification must have been obtained before a teacher can be characterized as “highly qualified.”
*796 The federal regulation, quoted at length above, begins by essentially repeating the statutory language. It provides that a “highly qualified teacher” “must ... have obtained full State certification as a teacher, which may include certification obtained through alternative routes to certification.” 34 C.F.R. § 200.56(a)(l)(i) (emphasis added). It then goes on, however, to provide that an alternative-route teacher is “highly qualified” even if he or she has not obtained “full State certification.” It provides that a teacher “meets the requirements in paragraph (a)(1)” (which include the requirement that “full State certification” have already been obtained), if that teacher “[i]s participating in an alternative route to certification program” and “[ijemonstrates satisfactory progress toward full certification as prescribed by the State.” Id. § 200.56(a)(2)(h) (emphasis added).
The Secretary points out that the meaning of “full State certification” in NCLB is ambiguous because it depends to a substantial degree on state law. We agree that the meaning of “full State certification” in NCLB is ambiguous and that it substantially depends on state law. But this ambiguity is irrelevant.
The “precise question at issue,” Chevron, 467 U.S. at 842, 104 S.Ct. 2778, is not the meaning of “full State certification” as used in NCLB. Rather, the “precise question at issue” is the difference between the meaning of “has obtained ” full State certification in the statute, 20 U.S.C. § 7801(23), and the meaning of “demonstrates satisfactory progress toward” full State certification in the regulation, 34 C.F.R. § 200.56(a)(2)(h). The difference between having obtained something and merely making satisfactory progress toward that thing is patent. We conclude that the Secretary’s regulation impermissibly expands the definition of “highly qualified teacher” contained in 20 U.S.C. § 7801(23) by including in that definition an alternative-route teacher who merely “demonstrates satisfactory progress toward” the requisite “full State certification.”
We therefore hold that 34 C.F.R. § 200.56(a)(2)(h) is invalid because it is inconsistent with the “unambiguously expressed intent of Congress.” Chevron, 467 U.S. at 843,104 S.Ct. 2778. We emphasize that our holding is based on the difference between the meaning of “has obtained” in 20 U.S.C. § 7801(23) and the meaning of “demonstrates] satisfactory progress toward” in § 200.56(a)(2)(h). Our holding is not based on the meaning of “full State certification” in § 7801(23).
C. Article III Standing
The Secretary did not argue in the district court that Appellants lack standing under Article III. He makes that argument for the first time on appeal. Lack of Article III standing is a non-waivable jurisdictional defect that may be raised at any time, even on appeal after failing to raise it in the district court. See Laub v. U.S. Dep’t of Interior, 342 F.3d 1080, 1085 (9th Cir.2003). For the reasons that follow, we conclude that Appellants have Article III standing.
“[T]he irreducible constitutional minimum of [Article III] standing contains three elements.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); see also DBSI/ TRIIV Ltd. P’ship v. United States, 465 F.3d 1031, 1038 (9th Cir.2006). “First, the plaintiff must have suffered an ‘injury in fact’ ” that is “concrete and particularized” and “actual or imminent.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130. “Second, there must be a causal connection between the injury and the conduct complained of,” such that the injury is fairly traceable to *797 the action challenged. Id. “Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Id. at 561, 112 S.Ct. 2130 (internal quotations omitted). We consider these three requirements in turn.
1.Injury in Fact
Appellants are California public school students, their parents, and two non-profit organizations, Californians for Justice (“CFJ”) and California Association of Community Organizations for Reform Now (“California ACORN”). The named students, along with student members of the two organizations, attend California public schools at which significant numbers of intern credential holders serve as teachers. As a result, these students are being taught by interns, have been taught by interns, or are substantially likely to be taught by interns.
Appellants presented evidence in the district court that a disproportionate number of interns teach in California public schools that serve minority and low-income students. For example, forty-one percent of interns in California teach in the twenty-five percent of schools with the highest concentrations of minority students. In contrast, two percent of interns in California teach in the ten percent of schools with the lowest concentration of minority students. Interns are similarly concentrated in schools serving low-income communities, with sixty-two percent of interns teaching in the poorest half of California’s schools. This disproportionate distribution of interns, Appellants contend, has resulted in a poorer quality education than Appellants would otherwise have received.
We conclude that Appellants have established injury in fact. In adopting NCLB, Congress decided that teachers with “full State certification” are, in the aggregate, better teachers than those without such certification. We recognize that it is debatable whether Congress was correct in deciding that teachers with “full State certification” are in fact better than teachers without such certification. This is particularly debatable if intern teachers enrolled in programs such as Teach for America do not have “full State certification.” But that is not for us to decide. We are bound to accept Congress’ determination that students taught by a disproportionate number of teachers without “full State certification” have been injured in fact.
2.Causation
We also conclude that there is a causal connection between the promulgation of the federal regulation challenged in this case and the later promulgation of the California regulations. The parties do not dispute that the California regulations were adopted as a result of the challenged federal regulation. To the degree that the federal regulation, and the piggybacking California regulations, have had the effect of permitting California and its school districts to ignore the fact that a disproportionate number of interns teach in schools in minority and low-income areas, there is a causal connection between the challenged regulation and the injury of which Appellants complain.
3.Redressability
Finally, we conclude that Appellants’ injury is likely to be redressed by the invalidation of the federal regulation. “Plaintiffs need not demonstrate that there is a ‘guarantee’ that their injuries will be redressed by a favorable decision.” Graham v. Fed. Emergency Mgmt. Agency, 149 F.3d 997, 1003 (9th Cir.1998). The plaintiffs’ burden is “relatively modest.” Bennett v. Spear, 520 U.S. 154, 171, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). They need only show that there would be a *798 “change in legal status,” and that a “practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.” Utah v. Evans, 536 U.S. 452, 464, 122 S.Ct. 2191, 153 L.Ed.2d 453 (2002). If an agency has misinterpreted the law, there is Article III standing “even though the agency ... might later, in the exercise of its lawful discretion, reach the same result for a different reason.” Fed. Election Comm’n v. Akins, 524 U.S. 11, 25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998).
The challenged federal regulation permits a state to treat intern teachers as “highly qualified” under NCLB even if those teachers are not fully certified under state law but are only “demonstrating] satisfactory progress toward full certification.” The 2004 California regulations, piggybacking on the federal regulation, provide that fully credentialed teachers under California law, as well as teachers who are currently enrolled in an intern program, are “highly qualified” within the meaning of NCLB. But the California regulations do not change the definition ■ of fully credentialed under California law. Thus, unless intern teachers have “full State certification” under some other California law, such teachers are not “highly qualified” for purposes of NCLB in the absence of the challenged federal regulation. If the federal regulation is invalidated, in other words, California is very likely out of compliance with NCLB. That “change in legal status” significantly increases the likelihood that California will take steps to increase the number of teachers with “preliminary” and “clear” credentials in minority and low-income schools in order to comply with NCLB.
The Secretary makes two arguments against this conclusion. First, he argues that intern teachers are, in fact, already fully certified under California law. In making this argument, the Secretary contends that because California is not a party to this suit we should not interpret California law ourselves, but rather should defer to the Secretary’s interpretation. This is a very odd contention. As the Secretary surely knows, we routinely interpret California law in cases in which California is not a party. And while we defer to the Secretary’s interpretation of federal law under Chevron, we owe no deference to his interpretation of state law.
It is reasonably clear that intern teachers are not fully certified under current California law. California’s Education Code distinguishes between holders of intern credentials and holders of preliminary and clear credentials in several ways. For example, § 44300(a)(1)(A) of the Education Code, which governs the hiring of permit holders, requires school districts to document recruitment efforts to hire “certificated teachers, including teacher candidates pursuing full certification through internship, district internship, or other alternative routes.” (Emphasis added.) That is, while interns are “certificated teachers,” they are merely “pursuing full certification.” Cal. Educ.Code § 44300(a)(1)(A); see also id. § 44225.7(a) (indicating that interns are not “fully prepared” teachers); Bakersfield Elementary Teachers Ass’n v. Bakersfield City Sch. Dist., 145 Cal.App.4th 1260, 1277, 52 Cal.Rptr.3d 486 (2006) (referring to credentials other than clear and preliminary as less than “regular”).
The 2004 piggybacking California regulations similarly distinguish between intern teachers and fully credentialed teachers. Under the regulation applicable to middle and secondary schools, a teacher is deemed to “meet the requirements of NCLB” under two circumstances. One is that the teacher be “currently enrolled in *799 an approved intern program.” The other is that the teacher have “a Ml credential.” CaLCode Regs. tit. 5, § 6110(2). Thus, as recently as 2004, California confirmed that intern credential holders are not Mly certified under the current credentialing system.
Second, the Secretary argues that if the federal regulation is held invalid, California will almost certainly change its credentialing laws to provide that the holder of an intern credential is Mly certified under California law. We disagree. As just discussed, California’s Education Code indicates that holders of “preliminary” and “clear” credentials have “Ml certification,” but that interns do not. After the passage of NCLB, California made no attempt to change its law to provide that teachers with intern credentials are fully credentialed under California law. Both before and after the promulgation of the challenged federal regulation, California law has characterized intern teachers as not having Ml credentials. The Secretary points to no evidence indicating that, in the event the federal regulation is held invalid, California will change its credentialing law in a manner it has so far not seen fit to do.
Finally, our dissenting colleague makes an argument not made by the Secretary. He argues that even if the federal regulation is struck down, and even if intern teachers in California are not “highly qualified” within the meaning of NCLB, there is nothing in NCLB that empowers the Secretary to withhold funds as means of compelling a state to adopt a specific system of teacher credentialing. Diss. at 805 (citing 20 U.S.C. § 7910). But that is not the issue. It is undisputed that NCLB gives the State great flexibility in deciding which teachers are Mly certified under state law, and that the Secretary cannot compel a State to adopt any specific credentialing system.
The issue, rather, is whether the Secretary has the authority to withhold funds when a State fails to take steps to ensure that students in minority and low-income schools are not taught disproportionately by teachers without “full State certification” as the state then defines “full certification.” That is, a state is free to define “full certification” in any way it chooses. But then, once having defined Ml certification under state law, the state is required to take steps to ensure that fully certified teachers are proportionately represented in the teaching staffs of minority and low-income schools. It is undisputed that the Secretary has authority to withhold funds if a state does not take such steps. See 20 U.S.C. § 1234c (Secretary may withhold funds if a recipient “is failing to comply substantially with any requirement of law applicable to such funds”); id. § 6311(b)(8)(C), (g)(2) (Secretary may withhold funds if the State has not submitted a plan describing “specific steps the State educational agency will take to ensure that both schoolwide programs and targeted assistance schools provide instruction by highly qualified instructional staff’).
The Secretary is not required to withhold funds if a state fails to take steps to come into compliance with NCLB. The statute provides that he “may” do so rather than that he “must” do so. Id. §§ 1234c, 6311(g)(2). But the possibility of the Secretary withholding funds is an obvious incentive for a State to comply with NCLB. Further, even if the Secretary does not withhold funds, we are unwilling to assume that California is a scofflaw state. That is, we are unwilling to assume that California will refuse to take steps to come into compliance with NCLB in the absence of such compulsion.
Conclusion
We cannot be absolutely certain how California will respond to the “change in *800 legal status” effected by the invalidation of § 200.56(a)(2)(ii). It is possible, as the Secretary argues, that California will change its credentialing law such that intern teachers will, for the first time, be fully certified under state law. But, as discussed above, the Secretary points to no evidence supporting his contention that California is likely to do so. Indeed, the available evidence suggests precisely the opposite. On the record before us, we conclude that a favorable decision of this court will significantly increase the likelihood of redress of plaintiffs’ injuries. See Utah, 536 U.S. at 464, 122 S.Ct. 2191. That is all that is required by Article III. See Fed. Election Comm’n, 524 U.S. at 25, 118 S.Ct. 1777. We therefore hold that Appellants have standing under Article III.
We further hold that the definition of a “highly qualified teacher” contained in 34 C.F.R. § 200.56(a)(2)(h) is invalid because it impermissibly expands the definition in 20 U.S.C. § 7801(23) to include teachers who only “demonstrate[ ] satisfactory progress toward full certification.” Our holding does not depend on the meaning of “full State certification” in § 7801(23). We do not address the question whether the Secretary could promulgate a valid regulation providing that an intern teacher meeting certain criteria could have “full State certification” within the meaning of NCLB.
We reverse the district court’s grant of summary judgment in favor of the Secretary. We remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.

. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary Arne Duncan is automatically substituted for former Secretary of Education Margaret Spellings as Appellee in this case.