Jason YAMADA, D.D.S., on behalf of himself and others similarly situated, Plaintiff,

v.

NOBEL BIOCARE HOLDING AG, Nobel Biocare AB, Nobel Biocare USA, LLC, and Does 1 through 50, Defendants.

No. 2:10–cv–04849–JHN–PLAx.

United States District Court, C.D. California.

Aug. 12, 2011.

Jason T. Baker, Audet & Partners LLP, William M. Audet, Alexander Hawes and Audet, San Francisco, CA, Jason E. Ochs, Ramon R. Lopez, Lopez McHugh LLP, Newport Beach, CA, Stephen D. Ochs, Law Offices of Stephen D. Ochs, Missoula, MT, for Plaintiff.

Eric Y. Kizirian, Roy M. Brisbois, Lewis Brisbois Bisgaard and Smith LLP, Los Angeles, CA, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [48]

JACQUELINE H. NGUYEN, District Judge.

The matter is before the Court on Plaintiff Jason Yamada, D.D.S.'s ("Plaintiff") Motion for Class Certification and to Appoint Class Representative and Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Docket 48.) The Court previously deemed the matter appropriate for decision without oral argument. *See* Fed. R.Civ.P. 78(b); Local Rule 7–15. For the reasons herein, the Court GRANTS Plaintiff's Motion.

### I. FACTUAL BACKGROUND

The allegations below are culled from the First Amended Complaint ("FAC"), which is the operative complaint in this matter. (*See* Docket No. 18; *see also,* 1/20/11 Order at 13, Docket No. 36.) Plaintiff is a dentist who has purchased dental implants from Defendants Nobel Biocare Holding AG, Nobel Biocare AB, and Nobel Biocare USA, LLC (collectively, "Defendants"), three affiliated companies that Plaintiff alleges designed, manufactures, markets, and sells the dental implants at issue. (FAC ¶¶ 12–15, 20.) Defendants launched the implant, called the NobelDirect, in 2004. (*Id.* at ¶ 22.) Plaintiff implanted dozens of NobelDirect implants in his patients between 2004 and 2005. (*Id.* at ¶ 12.) The implants of at least a dozen of Plaintiff's patients have failed, requiring surgical removal, reconstruction, replacement, and monitoring. (*Id.*) Plaintiff has paid out of pocket for these services in order to protect both his patients' health and welfare and the goodwill of his dental practice. (*Id.*)

Plaintiff alleges that the NobelDirect is defective both in the design of the implant itself and in the implantation technique that Defendants recommend in its use. (*Id.* at ¶¶ 1–2, 32.) For example, Plaintiff asserts that the tapered one-piece design of the NobelDirect causes "bone loss, bone resorption, lack of implant osseointegration, gingival retraction, gingival pitting with metallic discoloration and/or failed and failing implants." (*Id.* at ¶ 2.) Additionally, Plaintiff alleges that these complications occur particularly when the NobelDirect is implanted through the use of a gingival punch insertion site, rather than the alternative technique using a surgical flap. (*Id.* at ¶¶ 34, 48, 51; *see also id.* at ¶ 23 ("The implant was ... designed to be screwed directly into the jawbone without having to first retract the gingival [tissue] covering the alveolar crest bone.").)

Plaintiff further alleges that Defendants knew of the product's defects and failed to disclose the defects and associated risks, such as in the product labeling. (*Id.* at ¶¶ 39–43.) In addition, Defendants made false representations about the NobelDirect's safety and effectiveness, including through a marketing brochure distributed to dentists beginning in about 2003. (*Id.* at ¶¶ 51–52.) The brochure advertised the NobelDirect as "anatomically correct in design and biologically correct in action," claimed that it caused reduced bone loss and less discomfort than other implants, touted the flapless implantation procedure and one-piece design as making the implant easy to use, and represented the NobelDirect's implantation as a "common and safe dental procedure." (*Id.* at ¶¶ 54–56.)

Plaintiff alleges that he and other dentists relied on Defendants' representations of the

NobelDirect's ease of use and safety, leading them to purchase the implants directly from Defendants. (*Id.* at ¶¶ 33, 48, 59.) Additionally, according to the FAC, Defendants' nondisclosures and misrepresentations made it impossible for Plaintiff and other dentists to learn about the NobelDirect's defects. (*Id.* at ¶¶ 70, 72.) Plaintiff also alleges that Defendants mailed a letter to its customers on or about February 25, 2008, which asserted "there is no potential hazard associated with the continued use of the NobelDirect" and "implant techniques have normal contraindications and risks." (*Id.* at ¶ 73.)

Based on the foregoing allegations, Plaintiff commenced this action on June 30, 2010. Plaintiff, on behalf of himself and a class defined as "[a]ll dentists in the United States who have implanted NobelDirect implants," asserts federal jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act. (*Id.* at ¶ 61.) Plaintiff alleges six claims for relief: (1) declaratory relief; (2) implied indemnity; (3) breach of express warranty; (4) breach of implied warranty; (5) unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200 *et seq.;* and (6) fraudulent business practices in violation of the UCL. On January 20, 2011, the Court dismissed with prejudice the second cause of action. (Docket No. 36.)

## II. THE INSTANT MOTION

By this motion, Plaintiff moves for an order certifying this action as a nationwide class action, appointing him class representative, and appointing the law firms, Audet & Partners, LLP; Lopez McHugh, LLP; and the Law Offices of Stephen Ochs, D.D.S., J.D., as class counsel. In the moving papers, Plaintiff provides a broader definition of the proposed class:

> All individuals and entities in the United States who have purchased any NobelDirect dental implant other than the "NobelDirect Groovy."

(Notice of Mot. 1.) As stated previously, in the FAC, Plaintiff provided a narrower definition of the class: "[a]ll *dentists* in the United States who have implanted NobelDirect implants." (FAC ¶ 61 (emphasis added).)

To square with the FAC's definition of the class, the scope of the class shall be defined as follows:

> All dentists in the United States who have purchased any NobelDirect dental implant other than the "NobelDirect Groovy."

This definition is more precise and better reflects Plaintiff's intent to limit the members to "dental professionals" who purchased the implants and whose names are contained in Defendants' mailing list. (*See* Mot. 24; Rule 26(f) Joint Report 4.)

## III. DISCUSSION

■ Pursuant to Rule 23 of the Federal Rules of Civil Procedure, one or more members of a class may sue as representative parties on behalf of the entire class. The party seeking class certification bears the burden of demonstrating that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) is met. *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.,* 593 F.3d 802, 807 (9th Cir.2010). Although a court has "broad discretion" to certify a class, it must conduct a "rigorous analysis" to determine whether the party seeking certification has met its burden. *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir.2001); *see also Yokoyama v. Midland Nat'l Life Ins. Co.,* 594 F.3d 1087, 1090 (9th Cir.2010) ("The most important determination, i.e., the ultimate decision as to whether or not to certify the class, must ... involve a significant element of discretion."). The court may not inquire into the merits of the class representatives' underlying claims and must accept as true the substantive allegations of the complaint. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *In re Syncor ERISA Litig.,* 227 F.R.D. 338, 341 (C.D.Cal.2005).

### A. Rule 23(a)

To certify a class, Rule 23(a) requires Plaintiff to satisfy the following elements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Zinser,* 253 F.3d at 1186.

### 1. Numerosity

■ Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Here, Plaintiff claims that "more than 100 dentists nationwide purchased" over 30,000 "defective implants." (Mot. 11 (citing Audet Decl., Exh. 24).) Joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnty. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement ... satisfied solely on the basis of the number of ascertained class members ... and listing thirteen cases in which courts certified classes with fewer than 100 members"). Looking at the evidence submitted by Plaintiff (Audet Decl. 24, Exh., ¶ 25), it appears that Defendants have sold a total of 27,370 Nobel Directs throughout the United States. While this is not conclusive as to the number of dentists who purchased the product, Defendants do not dispute that there are at least 100 potential class members. Therefore, Plaintiff meets Rule 23(a)'s numerosity requirement.

### 2. Commonality

■ Rule 23(a)(2) requires that there be common questions of law or fact. "Only one significant issue of law or fact need be demonstrated to meet this requirement." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 618 (C.D.Cal.2008). Plaintiff indicates that common questions of law and fact include: (1) whether Defendants had a duty to disclose and failed to disclose design defects; (2) whether Defendants had a duty to disclose and failed to disclose information regarding defective instructions; (3) whether Defendants expressly warranted the NobelDirect; and (4) whether Defendants expressly and impliedly warranted the lower incidence of complications for the implants. (Mot. 11.) The Court agrees and finds that Plaintiff has established the commonality requirement of Rule 23(a).

### 3. Typicality

Under Rule 23(a)(3)'s "permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998). Here, Plaintiff's claims and the absent class members' claims arise from the same alleged unfair business practices. Moreover, Plaintiff is a dental professional who purchased and used the same product with the same alleged defective design and instructions. Typicality is satisfied.

### 4. Adequacy of Representation

■ Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In reviewing this issue, the Court must resolve two questions: "(1) do[es] the named plaintiff[ ] and [his] counsel have any conflicts of interest with other class members, and (2) will the named plaintiff[ ] and [his] counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The Court finds an absence of any conflict between the members of the class. Furthermore, Plaintiff has also demonstrated that he and counsel will vigorously prosecute the case on behalf of the class. (*See* Baker Decl., Ex. 16–18; docket no. 48–2.) Accordingly, Plaintiff has satisfied Rule 23(a)(4).

## B. Rule 23(b)

Plaintiff must show that at least one requirement of Rule 23(b) is met. *Zinser*, 253 F.3d at 1186. In his Motion, Plaintiff seeks class certification under Rule 23(b)(3) and Rule 23(b)(2). (*See* Mot. 15–24, 25–26, respectively.)

### 1. Certification under Rule 23(b)(3) Is Appropriate

Rule 23(b)(3) requires that questions of law or fact common to the class "predominate" over questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R.Civ.P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623, 117

S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996).

■ Here, the putative class satisfies the commonality requirement. The claims of all prospective class members involve the same device with the same alleged defect, marketed using the same alleged material omissions and misrepresentations, and covered by the same warranty. The Court now examines whether these common questions predominate over questions involving individual members of the proposed class.

#### a. Individualized Issues of Reliance Do Not Predominate

Defendants contend that the reliance element of Plaintiff's UCL claim hinges on questions of individualized proof, which predominate over common questions. (Opp'n 9.) The Court disagrees. The record reflects that the alleged omissions and affirmative misrepresentations were consistently made and are therefore common to all members of the putative class. (Audet Decl., Ex. 21, Nilsson Dep. at 49:2–12 [testifying that there were fewer than 6 brochures].) The Court therefore finds an inference of class-wide reliance on the alleged misrepresentations. *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D.Cal.2009) ("For a class action, an inference of reliance arises as to the entire class only if the material misrepresentations were made to all class members."). "An inference of reliance arises if material misrepresentations were 'made to persons whose acts thereafter were consistent with reliance upon the representation.'" *Id.* Here, it is unlikely that a member of the putative class would have purchased the NobelDirect product without having been influenced by Defendants' uniform marketing claims. Furthermore, it is reasonable to assume that no rational member of the putative class would have purchased and used the NobelDirect implant had he or she been aware of the alleged defective design. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D.Cal.2006) (holding that the court could reasonably assume that no rational class member would have purchased the product had he or she known of the alleged misrepresentation). Accordingly, the identical nature of the alleged fraudulent representations supports a presumption of reliance.

Moreover, assuming *arguendo* that a presumption of reliance is not warranted and individualized questions do exist—common issues predominate over any individualized reliance issues. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 737 (9th Cir. 2007) (affirming that "individual circumstances ... would not destroy predominance" of common issues); *Schwarm v. Craighead*, 233 F.R.D. 655, 663 (E.D.Cal. 2006) (holding that—even in the face of "significant individual questions" of reliance—whether defendants' standardized conduct amounted to actionable misrepresentations predominates the action).

#### b. Individualized Issues of Causation Do Not Predominate

Defendants argue that numerous factors play into the failure of surgical dental implants, and "[t]hus, a single classwide determination of plaintiff's declaratory relief claim is impossible." (Opp'n 14.) Defendants propose that the existence of these other contributing or independent factors precludes class-wide liability. The Court disagrees. Whether or not other factors play into dental implant failures does not affect whether Defendants marketed and sold defective implants.

This case is analogous to *Wolin v. Jaguar Land Rover North America, LLC*, where a plaintiff purchased a car with an alleged alignment defect that caused the tires to wear prematurely. 617 F.3d 1168, 1170 (9th Cir.2010). The Ninth Circuit found that "[a]lthough individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect." *Id.* at 1173. Accordingly, "[c]ommon issues predominate[d] such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so." *Id.*

In the instant case, common issues also predominate, *inter alia*, whether the Nobel-Direct implant was and is defective, whether Defendants were aware of the alleged defect, and whether Defendants violated a duty to disclose such knowledge. The relevant inquiry focuses on the existence of the defect as manufactured and not on the factors leading to failure and injury. Though individual factors might affect implant failure, they do not affect whether the implants were sold with a defect and subsequently need to be removed, repaired, or replaced. Plaintiff's allegations are therefore susceptible to proof by generalized evidence.

### c. Individualized Issues of Damages Do Not Predominate

Defendants also argue that "individual damages issues predominate." (Opp'n 13.) Though "[t]he amount of damages is invariably an individual question ... [it] does not defeat class action treatment." *Yokoyama*, 594 F.3d at 1094. Thus, in the Ninth Circuit, "damage calculations alone cannot defeat certification." *Id; accord Negrete*, 238 F.R.D. at 494 (holding the predominance requirement to be satisfied despite the existence of individual damage issues). Similarly, here, individualized damages do not preclude class certification.

Therefore, because there are no individualized issues sufficient to render class certification inappropriate under Rule 23(b)(3), class issues predominate.

### d. Article III Standing

Defendants argue that absent class members must have Article III standing in order to bring a UCL Claim. (Opp'n 7–9.) In support of this proposition, Defendants cite two cases from this district, *Burdick v. Union Sec. Ins. Co.*, 2009 WL 4798873 (C.D.Cal. Dec. 9, 2009) and *Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D.Cal.2011). There is no controlling authority requiring absent class members, as opposed to the named plaintiffs, to satisfy Article III's standing requirements. *See Webb*, 272 F.R.D. at 497. Nonetheless, assuming *arguendo* that absent class members need to satisfy the standing requirements, there is no competent evidence to show that a segment of the putative class will fail to satisfy Article III's requirements.

To have standing, a plaintiff must have suffered (1) "injury in fact"; (2) there is a causal connection between the injury and the complained-of conduct; and (3) it is likely that a favorable decision will redress the injury. *Webb*, 272 F.R.D. at 498 (citing *Renee v. Duncan*, 623 F.3d 787, 796–97 (9th Cir.2010)). In *Burdick*, the court decertified the class with regard to the UCL claim because the majority of class members have not sought disability benefits and therefore, did not have standing. 2009 WL 4798873, at *6 n. 9. In *Webb*, the court denied the motion for class certification on the ground that the majority of the absent plaintiffs suffered no injury. 272 F.R.D. at 498. Unlike *Burdick* and *Webb*, here, there is no evidence to show that members of the absent class have *not* suffered any injury. On the contrary, Plaintiff's theory is that the implants as designed and manufactured are defective, and therefore, it follows that class members who purchased the implants have suffered injury in fact. Accordingly, *Burdick* and *Webb* are easily distinguishable.

### e. Class Action Is Superior to Other Available Methods

Rule 23(b)(3) also requires "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Because common issues of law and fact predominate, as discussed above, class certification would be the fair and efficient means of resolving this dispute and avoiding duplicative litigation.

### 2. Certification under Rule 23(b)(2) Is Inappropriate

■ Certification under Rule 23(b)(2) is appropriate when a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b). In addition to a damages class, Plaintiff request that the Court certify an injunctive relief class for Plaintiff's UCL and Declaratory Relief causes of action.

(Mot. 25.) Plaintiff submits that a declaration and injunction will aid the putative class in ensuring their patients have access to the best care possible and that the responsibility for paying it will rest on Defendants. (*Id.*) "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser,* 253 F.3d at 1195. A class seeking monetary damages may be certified under Rule 23(b)(2) where damages are "merely incidental to [the] primary claim for injunctive relief." *Id.*

In the instant case, Plaintiff's proposed class is not appropriate for certification pursuant to Rule 23(b)(2). Here, the amended class action complaint primarily seeks monetary relief of $450 million in the form of reimbursements, costs, projected repairs, and medical monitoring expenses. (Rule 26(f) Joint Report, docket no. 25.) Although the complaint seeks declaratory and injunctive relief to enjoin Defendants from their alleged "unfair, fraudulent and deceitful activity," the injunctive relief is merely incidental to the primary claim for monetary damages. (*See* FAC, 17–18.) Accordingly, Rule 23(b)(2) certification is inappropriate.

## C. Defendants' Other Objections to Class Certification Fail

Defendants argue that Plaintiff's claims are time-barred. (Opp'n 13.) However, it is possible that mere notice of bone loss by particular patients of Plaintiff; communications regarding generic problems with the NobelDirect implants; concerns expressed by some clinicians; and the 7% decrease in Nobel's stock are not sufficient for Plaintiff and the putative class to reasonably suspect that the product was defective for purposes of determining when the limitations period started to run. It is possible that the putative class was not aware of the defect until adverse studies concerning the NobelDirect implant were released in 2007. Furthermore, Defendants have not submitted any evidence showing the necessity of individualized inquiry with regard to the limitations period.

Defendants also argue that Plaintiff's implied warranty claim is not subject to class-wide proof. (Opp'n 15.) Defendants cite two cases—neither of which are binding on this Court—that are readily distinguishable from the present case. In *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595 (S.D.N.Y.1982), plaintiffs claimed that "purchase of a defective tire, ipso facto, caused economic loss." *Id.* at 602. The court disagreed and held that those "[t]ires which lived full, productive lives were, by demonstration and definition, fit for the ordinary purposes." *Id.* However, the instant facts, if proved, require that the allegedly defective NobelDirect implants be repaired or replaced and also call for continued medical monitoring. As a result, the NobelDirect implants cannot reach full, productive lives or be fit for ordinary purposes. Defendant uses *Tietsworth v. Sears,* 720 F.Supp.2d 1123 (N.D.Cal.2010), to stand for the proposition that "[t]he mere manifestation of a defect by itself" is not sufficient to support a claim of implied warranty. *Id.* at 1142 (internal quotation mark omitted) (citation omitted). However, the court in *Tietsworth* held in full that "[i]nstead [of mere manifestation of a defect], there must be a fundamental defect that renders the product unfit for its ordinary purpose." *Id.* Here, the alleged safety defects in the NobelDirect implant render the product unfit and are susceptible to generalized proof.

Defendants further contend that the cause of action for breach of express warranty is not susceptible to class-wide proof. (Opp'n 16.) Specifically, Defendants allege that any warranties regarding the NobelDirect product did not become "part of the basis of the bargain" without Plaintiff's reliance thereon. *See* Cal. Com.Code § 2313. However, because Plaintiff does assert reliance on the marketing literature and manual, the Court declines to find otherwise. (*See* Reply 21); *see also Pau v. Yosemite Park & Curry Co.,* 928 F.2d 880, 887 (9th Cir.1991) (holding that "a reasonable jury could have concluded ... brochure advertising ... constituted a statement of fact that ... became part of the basis of the bargain" for deceased victim); *Weinstat v. Dentsply Int'l, Inc.,* 180 Cal. App.4th 1213, 103 Cal.Rptr.3d 614, 632 (2010) (holding that a seller's right to rebut on "basis of bargain" language goes to proof of

the affirmations themselves and "not [whether such affirmations were] an inducement to purchase").

■ Defendants also assert that Plaintiff failed to give Defendants notice of the defect within a reasonable time after discovery of the defect as required by California Commercial Code § 2607(3)(A). (Opp'n 16.) The notice requirement required by section 2607(3)(A) may be "given within a reasonable period of time ... follow[ing] the commencement of the lawsuit provided it is subsequently and properly pleaded." *See Hampton v. Gebhardt's Chili Powder Co.*, 294 F.2d 172, 174 (9th Cir.1961); *see also, In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F.Supp.2d 1145, 1180 (C.D.Cal.2010) (stating that post-filing notice may be given consistent with *Hampton*). Here, Plaintiff asserts that his filing of the complaint may serve as notice of the breach of express warranty. (Opp'n 15.) The mere filing of the suit cannot constitute notice as *Hampton* contemplates a separate notice "independent of that pleading." 294 F.2d at 175. *Hampton* held that "notice otherwise given within a reasonable period of time can under California law follow commencement of suit provided it is subsequently and properly pleaded." *Id.* at 174. If notice has not been provided, Plaintiff may now do so and seek leave to amend the complaint.

Defendants also argue that Plaintiff is not a typical or adequate class representative. (Opp'n 24–25.) Defendants claim that Plaintiff cannot prosecute the action vigorously on behalf of the entire class" because of "an insurmountable conflict of interest." (*Id.*) However, Defendants do not identify any persuasive conflict of interest and merely restate previous arguments of time-barred notice, reliance, and causation. (*Id.*) Accordingly, the Court finds Defendants' arguments unconvincing.

■ Defendants also argue that variations in state law preclude the predominance of common issues of law or fact. (Opp'n 24.) However, variations in state unfair competition law do not defeat the presumption that

California law should apply, and therefore do not preclude class certification. *See, e.g., Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 379 (N.D.Cal.2010) (certifying class and applying California choice of consumer protection laws where significant contacts exist in California) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 340 (N.D.Cal.2010) (holding that applying California law to claims by a class of nonresidents does not violate due process); *Mazza*, 254 F.R.D. at 620–21; *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 597–98 (C.D.Cal.2008). Here, the Court finds significant contacts with the State of California: NobelDirect's principal place of business within the United States is in California, NobelDirect's warranty program is administered in California, and NobelDirect implants "made in [the] USA" are made in California. (Reply 9.) Defendants cite only one district case in the Ninth Circuit that stands for the proposition that variations in state law preclude class certification. *See In re Hitachi Television Optical Block Cases*, 08CV1746 DMS NLS, 2011 WL 9403, at *9 (S.D.Cal. Jan. 3, 2011). However, the court in that case "recognize[d] that other courts have applied California law to claims of nationwide classes ... [when] the claims had more significant contacts with the State of California." (*Id.*) The Court finds that significant contacts exist between the claims and the State of California. Furthermore, "California's consumer protection laws are among the strongest in the country, and relatively recent California state court decisions hold that a California court may properly apply ... California statutes ... to non-California members of a nationwide class where ... some or all of the challenged conduct emanates from California." *Parkinson*, 258 F.R.D. at 598. Therefore, the Court does not find a material conflict between California consumer protection law and non-forum state law. California choice of law is proper.

### IV. CONCLUSION[1]

For the foregoing reasons, Plaintiff's motion for class certification is GRANTED.

---

1. Plaintiff has filed numerous evidentiary objec-    tions. The Court need not address these objec-

The Court certifies this action to proceed as a Class action under Federal Rules of Procedure and 23(b)(3).

IT IS FURTHER ORDERED THAT, good cause having been shown, Plaintiff's Motion to Appoint Jason Yamada, DDS as the representative plaintiff, and to appoint the law firms of Audet & Partners LLP, Lopez McHugh and Stephen Ochs, DDS, JD is GRANTED.

The parties are directed to meet and confer and present to this Court, within fifteen (15) days, a proposed notice to the certified class.

**IT IS SO ORDERED.**

tions as the challenged evidence has no bearing on the ultimate disposition of this matter.