**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SONYA RENEE; CANDICE JOHNSON, a
minor, by Sonya Renee, her
guardian ad litem; MARIBEL
HEREDIA; JOSE ALDANA, a minor,
by Maribel Heredia, his guardian
ad litem; B. DOE, a minor, by N.
Doe, her guardian ad litem;
MARIEL RUBIO; DANIELLE RUBIO, a
minor, by Mariel Rubio, her
guardian ad litem; STEPHANIE
RUBIO, a minor, by Mariel Rubio,
her guardian ad litem; GUADALUPE
GONZALEZ; DAISY GONZALEZ, a
minor, by Guadalupe Gonzalez,
her guardian ad litem; JAZMINE
JOHNSON, a minor, by Deanna
Bolden, her guardian ad litem;
ADRIANA RAMIREZ, a minor, by
Arcelia Trinidad Ramirez, her
guardian ad litem; JANE DOE, a
minor, by John Doe, her guardian
ad litem; CALIFORNIANS FOR JUSTICE
EDUCATION FUND; CALIFORNIA
ASSOCIATION OF COMMUNITY
ORGANIZATIONS FOR REFORM NOW,
       *Plaintiffs-Appellants,*
          v.

ARNE DUNCAN, in his official
capacity; UNITED STATES
DEPARTMENT OF EDUCATION,
       *Defendants-Appellees.*

No. 08-16661

D.C. No.
3:07-CV-04299-PJH

ORDER AND
OPINION

5007

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
June 23, 2011—Pasadena, California

Filed May 10, 2012

Before: Dorothy W. Nelson, William A. Fletcher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge William A. Fletcher;
Partial Concurrence and Partial Dissent by Judge Tallman

## COUNSEL

John T. Affeldt and Tara Kini, Public Advocates, Inc., San Francisco, California, for the plaintiffs-appellants.

Alisa B. Klein, United States Department of Justice, Civil Division, Washington, D.C., for the defendants-appellees.

Lisa A. Davis, Wilson Sonsini Goodrich & Rosati P.C., Palo Alto, California, for The National Coalition of ESEA Title I Parents, Inc., et al., as amicus curiae.

Donald B. Verilli, Jr., Jenner & Block LLP, Washington, D.C., for Teach for America, et al., as amicus curiae.

## ORDER

This court's opinion filed September 27, 2010, and reported at 623 F.3d 787, is supplemented with the attached.

The petition for rehearing, filed on October 12, 2010, is GRANTED.

---

## OPINION

W. FLETCHER, Circuit Judge:

Appellants Sonya Renee, et al., appeal the district court's order granting summary judgment in favor of Appellees U.S. Department of Education and Arne Duncan, Secretary of Education[1] (collectively, "the Secretary"). Appellants challenge a federal regulation permitting teachers who are participating in alternative-route teacher training programs, but who have not yet obtained full State certification, to be characterized as "highly qualified teachers" under the No Child Left Behind Act ("NCLB"). The district court granted summary judgment to the Secretary.

This case has a complicated history. We initially vacated the judgment of the district court for lack of Article III standing in a published opinion, with one panel member dissenting. *Renee v. Duncan*, 573 F.3d 903 (9th Cir. 2009) (*Renee I*). We subsequently granted a petition for panel rehearing and withdrew our prior opinion. We reversed the district court on the merits in a new published opinion, now with a different panel member dissenting. *Renee v. Duncan*, 623 F.3d 787 (9th Cir. 2010) (*Renee II*). After issuance of our opinion in *Renee II*, Congress changed the statutory provision upon which we had based that opinion. The new statutory provision, Section 163 of the Continuing Appropriations and Surface Transportation Extensions Act of 2011, became effective on December 22, 2010. Continuing Appropriations and Surface Transportation Extensions Act, Pub. L. No. 111-322, § 1, 124 Stat. 3518,

---

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary Arne Duncan is automatically substituted for former Secretary of Education Margaret Spellings as Appellee in this case.

3521 (2010) (hereinafter "Section 163"). Section 163 expires at the end of the 2012-2013 academic year. Absent further congressional action, the statutory provision upon which we based our opinion in *Renee II* will again be in effect.

We conclude several things in this opinion. First, we conclude, as we concluded in *Renee II*, that before the passage of Section 163 the challenged regulation violated NCLB. Second, we conclude that after the passage of Section 163 and so long as it is in effect, the challenged regulation is consistent with NCLB. Third, we conclude that despite the passage of Section 163, this appeal is not moot. Fourth, we conclude that before the passage of Section 163, NCLB required the reports to Congress concerning "highly qualified teachers," as that term was then defined in the statute. However, Appellants are not entitled to judicial enforcement of that reporting requirement. Finally, we conclude that Appellants are not entitled to attorney's fees based on their success in *Renee II*.

We therefore affirm the judgment of the district court.

## I.   Background

### A.   No Child Left Behind Act and the Challenged Regulation

The No Child Left Behind Act was enacted in 2002. Its overarching goal is "to ensure that all children have a fair, equal, and significant opportunity to obtain a high-quality education and reach, at a minimum, proficiency on challenging State academic achievement standards and state academic assessments." 20 U.S.C. § 6301. NCLB seeks to close the "achievement gap between high- and low-performing children, especially the achievement gaps between minority and nonminority students, and between disadvantaged children and their more advantaged peers." *Id.* § 6301(3).

NCLB provides funds to states and schools under several of its provisions, one of which is central to this appeal. Spe-

cifically, Title I funds are used to supplement the educational needs of disadvantaged students. *Id.* §§ 6301 *et seq.* The Secretary has the authority to withhold funds or to take other enforcement action if a state fails to comply substantially with NCLB's requirements. *Id.* § 1234c ("Whenever the Secretary has reason to believe that any recipient of funds under any applicable program is failing to comply substantially with any requirement of law applicable to such funds, the Secretary may . . . withhold further payments under that program as authorized by section 1234d of this title[.]").

A premise of NCLB is that good teachers — defined by Congress as "highly qualified" teachers — are crucial to educational success. NCLB requires that by the end of the 2005-06 academic year only "highly qualified" teachers should instruct core academic classes in school districts receiving Title I funding (the "100% requirement"). *Id.* § 6319(a)(2). "Core academic subjects" are "English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history, and geography." *Id.* § 7801(11); 34 C.F.R. § 200.55(c).

NCLB requires that states and school districts develop and submit plans to meet the mandates of the statute. 20 U.S.C. §§ 6311(a)(1), 6311(b)(8)(C), 6319(a)(2) (state plans); *id.* §§ 6312(b)(1)(N), 6312(c)(1)(I), 6319(a)(3) (district plans). Each state is responsible for ensuring compliance by its local school districts. *Id.* §§ 1232c, 7844(a). To receive funds under Title I of the statute, NCLB requires states to identify steps they will take to ensure that "poor and minority children are not taught at higher rates than other children by inexperienced, unqualified, or out-of-field teachers." *Id.* § 6311(b)(8)(C).

NCLB also requires that states and school districts report annually on their progress toward meeting the 100% requirement. *Id.* §§ 6311(h)(1)(C)(viii), 6311(h)(2), 6319(b)(1). States must provide this information to the Secretary, *id.*

§§ 6311(h)(4)(G), 6319(b)(1)(B), who must report nationwide statistics on "highly qualified teachers" to Congress, *id.* § 6311(h)(4)-(5). Schools receiving Title I funds must inform a parent when his or her child is taught for four or more weeks by a teacher who is not "highly qualified." *Id.* § 6311(h)(6)(B)(ii).

If a "State educational agency" fails to submit to the Secretary a "plan" satisfying the requirements of NCLB, *id.* § 6311(a)(1), the Secretary may withhold federal funds until the state has done so. *Id.* § 6311(g)(2) ("If a state fails to meet any of the requirements of this section, other than the requirements described in paragraph (1) [not at issue here], then the Secretary may withhold funds for State administration under this part until the Secretary determines that the State has fulfilled those requirements."); *id. § 6311(b)(8)(C)* ("Each State plan shall describe . . . the specific steps the State educational agency will take to ensure that both schoolwide programs and targeted assistance schools provide instruction by highly qualified instructional staff as required by sections 6314(b)(1)(C) and 6315(c)(1)(E).").

NCLB contains a lengthy definition of "highly qualified teacher." Of central concern in this litigation, before the passage of Section 163, "highly qualified" meant that:

> the teacher *has obtained full State certification as a teacher (including certification obtained through alternative routes to certification)* or passed the State teacher licensing examination, and holds a license to teach in such State, except that when used with respect to any teacher teaching in a public charter school, the term means that the teacher meets the requirements set forth in the State's public charter school law[.]

20 U.S.C. § 7801(23)(A)(i) (emphasis added).

On December 2, 2002, the Secretary promulgated regulations providing a more detailed definition of the statutory term "highly qualified teacher." 34 C.F.R. § 200.56. Section 200.56 provides, in pertinent part:

[A] "highly qualified teacher" . . . meets the requirements in paragraph (a) [and other paragraphs not relevant to this appeal].

(a) In general.

(1) Except as provided in paragraph (a)(3) of this section [covering charter schools], a ["highly qualified"] teacher . . . must —

(i) *Have obtained full State certification as a teacher, which may include certification obtained through alternative routes to certification*; or

(ii)(A) Have passed the State teacher licensing examination; and (B) Hold a license to teach in the State.

(2) A teacher meets the requirement in paragraph (a)(1) of this section if the teacher —

(i) Has fulfilled the State's certification and licensure requirements applicable to the years of experience the teacher possesses; or

(ii) *Is participating in an alternative route to certification program* under which —

(A) The teacher —

(1) Receives high-quality professional development . . . ;

(2) Participates in a program of intensive supervision . . . ;

(3) Assumes functions as a teacher only for a specified period of time not to exceed three years; and

(4) *Demonstrates satisfactory progress toward full certification as prescribed by the State*[.]

*Id.* (emphasis added).

Neither NCLB nor the Secretary's regulation defines "alternative routes to certification." The traditional path to a teaching credential generally involves obtaining a degree and taking education courses. The term "alternative routes to certification" generally refers to non-traditional training programs that are typically designed for people who already hold at least a bachelor's degree in a field other than education. These alternative programs are often designed to address teacher shortages in specific subjects or geographic areas. *See, e.g.*, Cal. Educ. Code § 44382 ("Alternative certification programs shall address geographic and subject matter shortage areas, and shall be targeted toward people with work experience and others who already have a bachelor's degree in the field in which they plan to teach.").

Some aspects of the traditional route to teacher certification — such as formal course work in education philosophy or pedagogy — are typically shortened, or sometimes waived altogether, in alternative-route programs. Several well-known

and successful alternative-route programs, such as Teach for America and Troops to Teachers, provide some training to participants before they begin teaching in the classroom. Teach for America participants, for example, receive training during the summer before they enter the classroom. Support and training typically continue for the length of an alternative-route program. After successful completion of an alternative-route program, a teacher receives a credential similar or identical to a credential obtained after successful completion of a traditional teacher-training program.

In December 2010, after the issuance of *Renee II*, our second panel opinion in this case, Congress amended the Continuing Appropriations Act by adding Section 163. Section 163 provides:

> (a) A "highly qualified teacher" includes a teacher who meets the requirements in 34 C.F.R. 200.56(a)(2)(ii) . . . .

> (b) This provision is effective on the date of enactment of this provision through the end of the 2012-13 academic year.

§ 1, 124 Stat. at 3521. Section 163 thus expands the statutory definition of "highly qualified teacher." After the passage of Section 163, and for so long as Section 163 remains in effect, an alternative-route teacher who "demonstrates satisfactory progress toward full certification" is a "highly qualified teacher" within the meaning of NCLB.

## B.   California Law

Neither NCLB nor the Secretary's regulation defines the term "full State certification" contained in NCLB. The parties agree that NCLB gives the states considerable flexibility in establishing credentialing systems under which a state teaching permit or credential may constitute "full State certifica-

tion" within the meaning of NCLB. The focus of this litigation is public school teachers in California. California law uses the terms "waiver," "permit," and "credential" to indicate various levels of teachers, and of certification, under state law. California has several levels of waivers, permits, and credentials, arranged in a rough hierarchy.

First, beginning at the bottom of the hierarchy, there are waivers. Individuals can teach pursuant to a waiver of the requirement for either a permit or credential. The Commission on Teacher Credentialing has authority to grant waivers in specified situations. Cal. Educ. Code § 44225(m).

Second, there are emergency permits, including an Emergency 30-day Substitute Teaching Permit, Cal. Code Regs. tit. 5, § 80025, and an Emergency Career Substitute Teaching Permit, *id.* § 80025.1. Emergency permits are valid for no more than one year and are restricted to the district that requested the issuance of the permit. *Id.* § 80023.1. Teachers can renew emergency permits, but renewal ordinarily requires, among other things, demonstrated progress toward a non-emergency credential. *Id.* § 80026.6(a)(6).

Third, there are Short-Term Staff Permits and Provisional Internship Permits. Unlike emergency permits, which largely cover substitute teachers, these permits allow a teacher to serve as a teacher of record in an assigned classroom. *Id.* §§ 80021(e), 80021.1(e).

Fourth, there is an "intern credential." This is the first certification in the hierarchy that California characterizes as a "credential" rather than a "permit." An intern credential holder is participating in, but has not yet completed, an alternative-route teacher training program. *See* Cal. Educ. Code §§ 44830.3, 44259(b)(3)(C). Like Short-Term and Provisional Internship permits, an intern credential allows the holder to serve as a teacher of record. *Id.* §§ 44325(a), 44326, 44830.3(a). California requires internship programs to provide

"preservice training . . . tailored to the grade level or class to be taught . . . ." *Id.* § 44830.3(b)(3).

Fifth, there is a "preliminary credential." A preliminary credential may be obtained through either a traditional or an alternative-route teacher training program. *Id.* § 44259(b)(3). A preliminary credential is generally valid for five years. *Id.* § 44251(a)(2), (b)(2). The minimum requirements for a preliminary credential include a bachelor's degree, a passing score on the state's "basic skills examination," satisfactory completion of an accredited "program of professional preparation" (including traditional and alternative-route programs), and a passing score on one or more subject matter examinations or completion of an approved subject matter program. *Id.* § 44259(b).

Finally, at the top of the hierarchy, there is a "clear credential." *See id.* § 44259(c). To obtain a clear credential, an individual must have held a preliminary credential, have completed a "program of beginning teacher induction," and have gained experience in specified areas. *Id.* § 44259(c)(2), (4). Clear credentials are generally valid for life. *See id.* § 44251(a)(3), (b)(3).

In 2004, after the promulgation of the federal regulation challenged in this case, California promulgated regulations that mimicked the federal regulation. The California regulation applicable to middle and secondary schools provides that a teacher "meets NCLB requirements" if the teacher "[i]s currently enrolled in an approved intern program for less than three years *or* has a full credential." Cal. Code Regs. tit. 5, § 6110(2) (emphasis added). The regulation applicable to elementary schools provides the same thing, but omits the word "full" before "credential." *Id.* § 6101(2) ("[i]s currently enrolled in an approved intern program for less than three years *or* has a credential") (emphasis added). By their use of the word "or," these regulations indicate that an intern teacher does not have a "(full) credential." That is, the California reg-

ulations provide the qualification criterion in the alternative:
A teacher "meets NCLB requirements" if the teacher is "enrolled in an approved intern program" *or* if the teacher "has a (full) credential."

As described in greater detail above, the challenged federal regulation provides that a teacher may be considered fully certified, and thus "highly qualified," within the meaning of NCLB, if the teacher "[i]s participating in an alternative route to certification program" and "[d]emonstrates satisfactory progress toward full certification," *or* if the teacher "[h]as fulfilled the State's certification and licensure requirements applicable to the years of experience the teacher possesses." 34 C.F.R. § 200.56(a)(2). The California regulations thus mimic the federal regulation, providing that a teacher "meets NCLB requirements" if that teacher is "currently enrolled in an approved intern program for less than three years" *or* "has a (full) credential." Cal. Code Regs. tit. 5, §§ 6110(2), 6101(2).

Before the passage of Section 163, Appellants did not object to characterizing an alternative-route teacher who had already obtained "full State certification" as a "highly qualified teacher." *See* 20 U.S.C. § 7801(23)(A)(i) ("highly qualified teacher" includes an alternative-route teacher who "*has obtained* full State certification as a teacher") (emphasis added); 34 C.F.R. § 200.56(a)(1)(i) ("highly qualified teachers" include alternative-route teachers who "*have obtained* full State certification as a teacher") (emphasis added). However, Appellants did object to characterizing as a "highly qualified teacher" an alternative-route teacher who had not yet obtained full state certification, but who merely "*[d]emonstrates satisfactory progress toward* full certification[.]" 34 C.F.R. § 200.56(a)(2)(ii)(A)(4) (emphasis added). Before the passage of Section 163, Appellants contended that such teachers were not "highly qualified" within the meaning of § 7801(23). Appellants contended that the challenged federal regulation, upon which the 2004 California regulations

are based, allowed a disproportionate number of intern teachers to teach in minority and low-income schools in California, in violation of NCLB. Specifically, they contended that intern teachers in California did not have "full State certification" and were thus not "highly qualified teachers" within the meaning of NCLB. They contended that if the § 200.56(a)(2)(ii) were declared invalid, California would not be allowed to treat intern teachers as highly qualified teachers for purposes of NCLB. Appellants contended that in that event California would likely take steps to ensure that fewer intern teachers, and more teachers with "preliminary" and "clear" credentials, teach in minority and low-income public schools in California.

### C.  Proceedings in the District Court

Appellants brought suit in federal district court, alleging that § 200.56(a)(2)(ii) was invalid because it characterized an alternative-route teacher who is still in the process of obtaining "full State certification" as a "highly qualified teacher." Both parties moved for summary judgment on the merits. The district court granted summary judgment to the Secretary, upholding § 200.56(a)(2)(ii). Appellants timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

### II.  Standard of Review

We review de novo questions of justiciability under Article III. *Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003). We also review de novo a district court's grant of summary judgment. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 941 n.17 (9th Cir. 2006). "Although we give deference to an agency's construction of a statutory provision it is charged with administering, we must reject those constructions that are contrary to clear congressional intent or that frustrate the policy Congress sought to implement." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002) (internal citation omitted).

### III. Discussion

### A. Before Passage of Section 163

In this section of the opinion, we discuss Appellant's challenge to 34 C.F.R. § 200.56(a)(2)(ii) before the passage of Section 163. Before its passage, we concluded that Appellants had Article III standing and that § 200.56(a)(2)(ii) was inconsistent with the plain language of NCLB. In this section, we recapitulate our discussion and holding in *Renee II.*

### 1. Order of Discussion

In a case where Article III justiciability is in question, we normally begin our discussion with that question because Article III justiciability is a prerequisite to reaching the merits of the dispute. But we reverse the usual order of discussion because we think our discussion of the merits will help the reader understand our discussion of Article III standing.

### 2. The Merits

The challenged federal regulation seeks to interpret and to implement NCLB. The regulation was adopted by the responsible federal agency through notice and comment rulemaking. We therefore applied the analytical framework outlined in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The first question is "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-843; *see also Pac. Nw. Generating Coop. v. Dep't of Energy*, 580 F.3d 792, 806 (9th Cir. 2009). If, however, we determine that Congress has not clearly spoken on the precise question, the second question is whether the agency's interpretation "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Because the intent of Congress, as expressed

in NCLB before the passage of Section 163, was clear, we did not get beyond the first question.

**[1]** NCLB provides that an alternative-route teacher is "highly qualified" once he or she has obtained "full State certification." Before the passage of Section 163, the statutory text provided, in pertinent part:

> The term "highly qualified" —
>
> > (A) when used with respect to any public elementary school or secondary school teacher teaching in a State, means that —
> >
> > > (i) the teacher *has obtained full State certification* as a teacher (including certification obtained through alternative routes to certification)[.]

20 U.S.C. § 7801(23) (emphasis added). NCLB did not define "full State certification," but it made clear — whatever "full State certification" meant — that such certification must have been obtained before a teacher could be characterized as "highly qualified."

**[2]** The federal regulation, quoted at length above, begins by essentially repeating the pre-Section 163 statutory language. The regulation provides that a "highly qualified teacher" "*must . . . have obtained* full State certification as a teacher, which may include certification obtained through alternative routes to certification." 34 C.F.R. § 200.56(a)(1)(i) (emphasis added). It then goes on, however, to provide that an alternative-route teacher is "highly qualified" even if he or she has *not* obtained "full State certification." It provides that a teacher "meets the requirements in paragraph (a)(1)" (which include the requirement that "full State certification" have already been obtained), if that teacher "[i]s participating in an alternative route to certification program" and

"*[d]emonstrates satisfactory progress toward* full certification as prescribed by the State." *Id.* § 200.56(a)(2)(ii) (emphasis added).

In his pre-Section 163 brief to us, the Secretary pointed out that the meaning of "full State certification" in NCLB was ambiguous because it depends to a substantial degree on state law. We agreed that the meaning of "full State certification" in NCLB is ambiguous because it substantially depends on state law. But this ambiguity was irrelevant.

**[3]** Before the passage of Section 163, the "precise question at issue," *Chevron*, 467 U.S. at 842, was not the meaning of "full State certification" as used in NCLB. Rather, the "precise question at issue" was the difference between the meaning of "*has obtained*" full State certification in the statute, 20 U.S.C. § 7801(23), and the meaning of "*demonstrates satisfactory progress toward*" full State certification in the regulation, 34 C.F.R. § 200.56(a)(2)(ii). The difference between having obtained something and merely making satisfactory progress toward obtaining it is patent. The panel majority concluded, before the passage of Section 163, that the Secretary's regulation impermissibly expanded the definition of "highly qualified teacher" contained in 20 U.S.C. § 7801(23) by including in that definition an alternative-route teacher who merely "demonstrates satisfactory progress toward" the requisite "full State certification." *Renee II*, 623 F.3d at 796.

**[4]** We therefore held, before the passage of Section 163, that § 200.56(a)(2)(ii) was invalid because it was inconsistent with the "unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843. We emphasized that our holding was based on the difference between the meaning of "has obtained" in 20 U.S.C. § 7801(23) and the meaning of "demonstrates satisfactory progress toward" in § 200.56(a)(2)(ii).

### 3. Article III Standing

The Secretary had not argued in the district court that Appellants lacked standing under Article III. He made that

argument for the first time on appeal. Lack of Article III standing is a non-waivable jurisdictional defect that may be raised at any time, even on appeal after failing to raise it in the district court. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1085 (9th Cir. 2003). We concluded that Appellants had Article III standing.

"[T]he irreducible constitutional minimum of [Article III] standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006). "First, the plaintiff must have suffered an 'injury in fact'" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. "Second, there must be a causal connection between the injury and the conduct complained of," such that the injury is fairly traceable to the action challenged. *Id.* "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations omitted). We considered these three requirements in turn.

### a.    Injury in Fact

Appellants are California public school students, their parents, and two non-profit organizations, Californians for Justice ("CFJ") and California Association of Community Organizations for Reform Now ("California ACORN"). The named students, along with student members of the two organizations, attend California public schools at which significant numbers of intern credential holders serve as teachers. As a result, these students are being taught by interns, have been taught by interns, or are substantially likely to be taught by interns.

Appellants presented evidence in the district court that a disproportionate number of interns teach in California public schools that serve minority and low-income students. For example, forty-one percent of interns in California teach in

the twenty-five percent of schools with the highest concentrations of minority students. In contrast, two percent of interns in California teach in the ten percent of schools with the lowest concentration of minority students. Interns are similarly concentrated in schools serving low-income communities, with sixty-two percent of interns teaching in the poorest half of California's schools. This disproportionate distribution of interns, Appellants contended, results in a poorer quality education than Appellants would otherwise have received.

We concluded that Appellants established injury in fact. In adopting NCLB, Congress decided, before the passage of Section 163, that teachers with "full State certification" were, in the aggregate, better teachers than those without such certification. We recognized that it is debatable whether Congress was correct in deciding that teachers with "full State certification" are better than teachers without such certification. This is particularly debatable if intern teachers enrolled in programs such as Teach for America do not have "full State certification." But that was not for us to decide. We were bound to accept Congress' pre-Section 163 determination that students taught by a disproportionate number of teachers without "full State certification" had been injured in fact.

### b. Causation

We also concluded that there was a causal connection between the promulgation of the federal regulation challenged in this case and the later promulgation of the California regulations. The parties do not dispute that the California regulations were adopted as a result of the challenged federal regulation. To the degree that the federal regulation, and the mimicking California regulations, had the effect of permitting California and its school districts to ignore the fact that a disproportionate number of interns teach in schools in minority and low-income areas, there was a causal connection between the challenged regulation and the injury of which Appellants complain.

c.    Redressability

Finally, we concluded that Appellants' injury was likely to be redressed by invalidation of the federal regulation. "Plaintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision." *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1003 (9th Cir. 1998). The plaintiffs' burden is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). Plaintiffs need only show that there would be a "change in a legal status," and that a "practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002). If an agency has misinterpreted the law, there is Article III standing "even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998).

The challenged federal regulation permits a state to treat intern teachers as "highly qualified" under NCLB even if those teachers are not fully certified under state law but are only "demonstrat[ing] satisfactory progress toward full certification." The 2004 California regulations, mimicking the federal regulation, provide that teachers with "full State certification" under California law, as well as teachers who are currently enrolled in an intern program, are "highly qualified" within the meaning of NCLB. But the California regulations do not change the definition of "full State certification" under California law. Unless intern teachers have "full State certification" under some California law other than these regulations, such teachers were not "highly qualified" for purposes of NCLB, before the passage of Section 163, in the absence of the challenged federal regulation. In other words, California was out of compliance with NCLB if the federal regulation was invalid. The "change in legal status" that would result from the invalidation of the federal regulation significantly increased the likelihood that California would

take steps to increase the number of teachers with "preliminary" and "clear" credentials in minority and low-income schools in order to comply with NCLB.

The Secretary made two arguments against this conclusion. First, he argued that intern teachers had "full State certification" under California law. The Secretary made the somewhat surprising argument that because California is not a party to this suit we should not interpret California law ourselves, but rather should defer to the Secretary's interpretation. As the Secretary surely knew, we routinely interpret California law in cases in which California is not a party. And while we defer to the Secretary's interpretation of federal law under *Chevron*, we owe no deference to his interpretation of state law.

It was reasonably clear that intern teachers did not have "full State certification" under California law. California's Education Code distinguishes between holders of intern credentials and holders of preliminary and clear credentials in several ways. For example, § 44300(a)(1)(A) of the Education Code, which governs the hiring of permit holders, requires school districts to document recruitment efforts to hire "certificated teachers, including teacher candidates *pursuing full certification* through internship, district internship, or other alternative routes." (Emphasis added.) That is, while interns are "certificated teachers," they are merely "pursuing full certification." Cal. Educ. Code § 44300(a)(1)(A); *see also id.* § 44225.7(a) (indicating that interns are not "fully prepared" teachers); *Bakersfield Elementary Teachers Ass'n v. Bakersfield City Sch. Dist.*, 145 Cal. App. 4th 1260, 1277 (Cal. Ct. App. 2006) (referring to credentials other than clear and preliminary as less than "regular").

The 2004 mimicking California regulations similarly distinguish between intern teachers and fully credentialed teachers. Under the California regulation applicable to middle and secondary schools, a teacher is deemed to "meet the requirements

of NCLB" under two circumstances. One is that the teacher be "currently enrolled in an approved intern program." The other is that the teacher have "a full credential." Cal. Code Regs. tit. 5, § 6110(2). Thus, as recently as 2004, California confirmed that intern credential holders are not fully certified under the current state credentialing system.

Second, the Secretary argued that if the federal regulation is held invalid, California would almost certainly change its credentialing laws to provide that the holder of an intern credential is fully certified under California law. We disagreed. As just discussed, California's Education Code indicates that holders of "preliminary" and "clear" credentials have "full certification" under state law, but that interns do not. After the passage of NCLB, California made no attempt to change its law to provide that teachers with intern credentials are fully credentialed under California law. Both before and after the promulgation of the challenged federal regulation, California law characterized intern teachers as not having full credentials. The Secretary pointed to no evidence indicating that, in the event the federal regulation were held invalid, California would change its credentialing law in a manner it had thus far not seen fit to do. Nor, indeed, has the Secretary attempted to argue that, in the wake of our opinion in *Renee II*, California has changed its credentialing law.

Finally, our dissenting colleague made an argument not made by the Secretary. He argued that even if the federal regulation were struck down, and even if intern teachers in California were not "highly qualified" within the meaning of NCLB, there is nothing in NCLB that empowers the Secretary to withhold funds as a means of compelling a state to adopt a specific system of teacher credentialing. In our view, that was not the issue. The issue, rather, was whether the Secretary has the authority to withhold funds when a State fails to take steps to ensure that students in minority and low-income schools are not taught disproportionately by teachers without

"full State certification" as the state defined "full certification."

It is undisputed that NCLB gives the State great flexibility in deciding which teachers are fully certified under state law, and that the Secretary cannot compel a State to adopt any specific credentialing system. That is, a state is free to define "full certification" in almost any way it chooses. But having defined full certification under state law, a state is required to take steps to ensure that fully certified teachers are proportionately represented in the teaching staffs of minority and low-income schools. It is undisputed that the Secretary has authority to withhold funds if a state does not take steps to comply with NCLB. *See* 20 U.S.C. § 1234c (Secretary may withhold funds if a recipient "is failing to comply substantially with any requirement of law applicable to such funds"); *id.* § 6311(b)(8)(C), (g)(2) (Secretary may withhold funds if the State has not submitted a plan describing "specific steps the State educational agency will take to ensure that both schoolwide programs and targeted assistance schools provide instruction by highly qualified instructional staff").

The Secretary is not required to withhold funds if a state fails to take steps to comply with NCLB. The statute provides that he "may" do so rather than that he "must" do so. *Id.* §§ 1234c, 6311(g)(2). But the possibility of the Secretary withholding funds was an obvious incentive for a State to comply with NCLB. Further, even if the Secretary did not withhold funds, we were unwilling to assume that California is a scofflaw state. That is, we were unwilling to assume that California would refuse to take steps to come into compliance with NCLB, as it existed prior to the passage of Section 163, in the absence of such compulsion.

## B. After Passage of Section 163

### 1. Effect of Section 163

[5] Section 163 has temporarily modified NCLB. It provides that the term "highly qualified teacher" in NCLB

includes a teacher who meets the requirements of 34 C.F.R. § 200.56(a)(2)(ii). Section 163 thus provides that an alternative-route teacher who merely "demonstrates satisfactory progress toward full certification" is "highly qualified" within the meaning of NCLB. Under Section 163, § 200.56(a)(2)(ii) is consistent with NCLB and is therefore valid. That is, so long as Section 163 remains in effect, it overrules our decision in *Renee II*.

**[6]** However, by its own terms, Section 163 remains in effect only through the end of the 2012-13 school year. If Congress takes no further action, the pre-Section 163 version of NCLB will again be the law. In that event, § 200.56(a)(2)(ii) will again be invalid because its definition of "highly qualified teacher" will again be inconsistent with the statutory definition.

### 2. Mootness

Neither side has contended that Congress's enactment of Section 163 has mooted the appeal. However, we have an independent obligation to ensure that a case is not moot within the meaning of Article III. *See Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000). Article III mandates that "there be a live case or controversy" when a federal court decides a dispute. *Burke v. Barnes*, 479 U.S. 361, 363 (1987). A case can be moot when a challenged statute or regulation "is repealed, expires, or is amended to remove the challenged language." *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir. 2011) (per curiam).

**[7]** We conclude that the passage of Section 163 does not moot this appeal. Section 163 is, by its express terms, temporary. It took effect in December 2010, on the date of enactment, and it will expire after the 2012-13 academic year. Absent further congressional action, 34 C.F.R. § 200.56(a)(2)(ii) will again conflict with NCLB's definition

of a "highly qualified teacher." *See Renee II*, 623 F.3d at 796. The Supreme Court has repeatedly held that a temporary halt to unlawful action does not moot a claim for injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 & n.4 (1983) ("[T]he case is not moot, since the moratorium by its terms is not permanent. Intervening events have not irrevocably eradicated the effects of the alleged violation." (citation and quotations omitted)); *Bullock v. Carter*, 405 U.S. 134, 141 n.17 (1972) (holding that temporary repeal of challenged statute does not moot case); *see also Ballen v. City of Redmond*, 466 F.3d 736, 741 (9th Cir. 2006) (same). Based on these holdings, we conclude that the temporary characterization of alternative route teachers defined in § 200.56(a)(2)(ii) as "highly qualified teachers" within the meaning of NCLB does not moot the appeal.

### 3.    Compliance with pre-Section 163 Reporting Requirements

**[8]** NCLB requires the Secretary to file an annual report to Congress in which the Secretary presents national and state-level data on compliance with NCLB goals. *See* 20 U.S.C. § 6311(h)(5). In their complaint, Appellants ask that the Secretary be enjoined to amend the reports previously submitted to Congress, in which he characterized alternative route teachers as "highly qualified." Appellants ask that the Secretary be enjoined from characterizing alternative route interns defined by § 200.56(a)(2)(ii) as "highly qualified teachers" in his 2005-2006 report to Congress on that academic year. Appellants also ask that the Secretary be enjoined to "notify" Congress that his 2002-2003 report relied on the unlawful definition of "highly qualified teachers" contained in § 200.56(a)(2)(ii).

**[9]** In *Guerrero v. Clinton*, 157 F.3d 1190 (9th Cir. 1998), we held that a federal court could not redress an injury based on an allegedly inadequate report that an agency is obligated to file with Congress. *Id.* at 1194. At issue in *Guerrero* was

a requirement that the President "report annually" to Congress on the impact of a compact with federal territories and the State of Hawaii. *Id.* at 1191. We described the report as "purely informational." *Id.* at 1195. We concluded,

> In sum, no legal consequences flow from [the] report and it has no "determinative or coercive effect upon the action of someone else" that in turn produced the [plaintiffs'] injury . . . . By the same token, the report is not agency action of the sort that is typically subject to judicial review. Because it triggers no legal consequences and determines no rights or obligations, no check on the substance of the report is necessary. Having requested the report, Congress, not the judiciary, is in the best position to decide whether it's gotten what it wants.

*Id.* at 1195 (internal citations omitted) (quoting *Bennet v. Spear*, 520 U.S. 154 (1997)).

   [10] As in *Guerrero*, the reporting requirement of NCLB that Appellants seek to enforce is "purely informational." The provision at issue, § 6311(h)(5), states, "The Secretary shall transmit annually to [two Committees of Congress] a report that provides national and State-level data on the information collected under paragraph (4)." 20 U.S.C. § 6311(h)(5). "Paragraph (4)," in turn, contains a requirement that the states report on seven specific metrics of academic success annually to the Secretary. 20 U.S.C. § 6311(h)(4). This reporting requirement is of the same character as the requirement in *Guerrero*. *See* 157 F.3d at 1191-92 n.4 (stating requirement that "the President shall report to the Congress with respect to the impact of" the compact on territorial governments and Hawai'i). Nothing in NCLB provides that the Secretary's reports to Congress have any legal consequences. As in *Guerrero*, we hold that Appellants' request for injunctive relief with respect to these reports was properly denied (though on a different basis) by the district court.

#### 4. Attorney's Fees

**[11]** Appellants seek attorney's fees under the Equal Access to Justice Act (EAJA). That statute provides: "[A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A); *see also Pierce v. Underwood*, 487 U.S. 552, 559-63 (1988).

**[12]** We have interpreted the term "substantial justification" as "describ[ing] a position that has a reasonable basis both in law and fact." *Timms v. United States*, 742 F.2d 489, 492 (9th Cir. 1984). That the Secretary did not prevail on the positions he has taken does not invoke a presumption that he was not substantially justified. *Id.* Assuming without deciding that Appellants qualify as a "prevailing party" under the EAJA, we conclude that the Secretary's position was substantially justified.

**[13]** We have issued two previous opinions in this case. In the first opinion, a split panel of this court agreed with the Secretary's position that Appellants lack standing. *Renee I*, 573 F.3d at 905. We reversed our position on the standing issue, *Renee II*, 623 F.3d at 80, but one of us continued to agree with the Secretary's position on standing, *id.* (Tallman, J., dissenting). On the merits, the district judge had agreed with the Secretary's position, holding that the challenged regulation was consistent with the definition of "highly qualified teachers" contained in NCLB. Given the substantial disagreement among federal judges on the Secretary's contentions, Appellants face the daunting task of arguing that the Secretary's position lacked a reasonable basis in law and fact.

**[14]** NCLB affords the Secretary substantial discretion in determining certain matters of policy. The Secretary contended throughout this litigation that the term "highly quali-

fied teacher" is sufficiently ambiguous so as to encompass alternative route interns defined by § 200.56(a)(2)(ii). In so doing, he advanced a "novel but credible extension or interpretation of the law." *Timms*, 742 F.2d at 492 (internal quotation marks omitted). He pursued his position without the guidance from any federal court on the meaning of the statutory phrase "highly qualified teachers." *See Armster v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 817 F.2d 480, 483-84 (9th Cir. 1987) (considering litigating position as substantially justified "especially since there was no case law directly to the contrary"). Given the Secretary's task and the divergent views of federal judges, it was reasonable for the Secretary to test the validity of the regulation "in the absence of any precedent on the question." *Foster v. Tourtelotte*, 704 F.2d 1109, 1112 (9th Cir. 1983) (per curiam).

**[15]** We therefore deny Appellants' motion for attorneys' fees under the EAJA.

## Conclusion

For the foregoing reasons, we reaffirm our decision in *Renee II* that 34 C.F.R. § 200.56(a)(2)(ii) is inconsistent with NCLB as it existed before the passage of Section 163. That Section prospectively overruled *Renee II*. So long as Section 163 remains in effect § 200.56(a)(2)(ii) is valid. However, if Congress does nothing, Section 163 will expire at the end of the 2012-13 academic year. In that event, our opinion in *Renee II* will again control.

**AFFIRMED**.

---

TALLMAN, Circuit Judge, dissenting in part and concurring in part:

I concur in the judgment and parts III.B.1—2—that the appeal is not moot—and III.B.4—that appellants are not enti-

tled to attorney's fees. I continue to believe that the appellants lack standing to bring this suit, *Renee II*, 623 F.3d at 800-807, and would dismiss this appeal for the reasons I previously explained.

I agree that if we were to reach the merits, the passage of § 163 did not make this appeal moot. However, the majority's detailed discussion of § 163 is extraneous dicta. Section 163 explicitly modifies NCLB to include the definition for "highly qualified teacher" contained in 34 C.F.R. § 200.56(a)(2)(ii). Because the regulation can no longer violate NCLB, it is unnecessary for the majority to address in this opinion whether—prior to the enactment of § 163—the challenged regulation violated NCLB.

Any discussion about the pre-§ 163 regulation is largely immaterial to the issue now before us because it depends upon a prediction of what Congress may do in 2013. What Congress has done is "prospectively overrule[ ] *Renee II*." *Op.* at 5036. Under the law of the case doctrine it appears that should Congress fail to act by 2013 the majority's opinion in *Renee II* would control. Given enactment of § 163, however, the discussion of whether the regulation violated NCLB pre-§ 163 becomes wholly irrelevant. I therefore do not join that part of the majority's opinion.